# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL BOYLE and ANNA BOYLE, **Plaintiffs** | : | No. 15cv746 |
| v. | : | (Judge Munley) |
| NORTH AMERICAN PACKAGING, LLC, d/b/a ECONO-PAK and LUIS NUNEZ and ANTONIA ALMONTE-NUNEZ and CORPORATE RESOURCE SERVICES, INC. individually and/or d/b/a DIAMOND STAFFING SERVICES, INC. individually and/or d/b/a STAFF MANAGEMENT GROUP, LLC, DIAMOND STAFFING SERVICES, INC. individually, and STAFF MANAGEMENT GROUP, LLC, Individually **Defendants** | : | |

## **MEMORANDUM**

Before the court for disposition are two motions for summary judgment filed by Defendant North American Packaging, LCC, d/b/a Econo-Pak and Defendant Corporate Resource Services, Inc. The motions are fully briefed and are ripe for disposition.

**Background**

This case arises from a motor vehicle accident that occurred on April 1, 2014 on US-206 in Montague Township, New Jersey. (Doc. 65, Def. CRS's

Stmt. of Mat. Facts (hereinafter "SOF") ¶ 2).[1] Defendant Luis Nunez (hereinafter "Defendant Nunez") was operating a 1998 Ford Econoline van in the southbound lane of the highway when he crossed into the northbound lane and crashed directly into Plaintiff Michael Boyle's vehicle. (Id. ¶ 2). The sudden collision between the parties propelled plaintiff's vehicle 150 feet backwards uphill. (Doc. 5, Amend. Compl. ¶ 11). As a result, Plaintiff Boyle suffered several serious permanent injuries. (Id. ¶ 14). Defendant Antonia Almonte-Nunez, wife of Defendant Luis Nunez, who was not in the van at the time of the accident, owned the Ford Econoline and gave Defendant Nunez permission to operate the vehicle. (Doc. 65, Def. CRS's SOF ¶ 4).

Defendant Corporate Resource Services, Inc. (hereinafter "CRS") employed Defendant Nunez. (Id. ¶ 5). CRS is a staffing agency. It hires individuals to work at various businesses, including Defendant Econo-Pak. At the time of the accident, Defendant Nunez was returning home from work at the Econo-Pak plant in Milford, Pennsylvania, where he worked as a laborer assembling pallets. (Id. ¶ 5-6). Also in Defendant Nunez's vehicle were eleven passengers who were also returning from work at the Econo-Pak plant. (Doc. 5,

---

[1] For this brief factual background section, we will cite primarily to Defendant Corporate Resource Services, Inc.'s statement of material facts as to which no genuine issue remains to be tried. Defendant Econo-Pak and the plaintiffs appear to generally agree with these background facts. Where more context is necessary, we will cite to the supplementary documents.

Amend. Compl. ¶ 12). Although CRS provided transportation to its employees to the Econo-Pak plant from the CRS office in New Jersey, Defendant Nunez and his wife, Defendant Antonia Almonte-Nunez, did not use this transportation. (Doc. 65, Def. CRS's SOF ¶ 20). Instead, they arranged rides in Defendant Antonia Almonte-Nunez's mini-van for coworkers. (Id. ¶ 9). In exchange, these coworkers would contribute gas and toll money to the Nunez family. (Id. ¶ 11).

Plaintiff Michael Boyle and his wife, Anna Boyle, filed this lawsuit for damages sustained in connection with the April 1, 2014, car accident on April 16, 2015. (Doc. 1). The complaint named North American Packaging, LLC d/b/a Econo-Pak (hereinafter "Defendant Econo-Pak"), Luis Nunez, and Antonia Almonte-Nunez as defendants. Plaintiffs amended their complaint to include CRS as a defendant on June 4, 2015. (Doc. 5). The amended complaint asserts causes of action for negligence against Defendant Nunez, Defendant CRS, and Defendant Econo-Pak; negligent entrustment against Defendant Antonia Almonte-Nunez; and loss of consortium against all defendants. A motion to transfer the case to the United States District Court for the District of New Jersey was denied on August 16, 2016. (Doc. 59).

At the conclusion of discovery, Defendant CRS moved for summary judgment. (Doc. 64). Five days later, Defendant Econo-Pak also moved for

summary judgment. (Doc. 68). The motions were fully briefed, bringing the case to its present posture.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. Plaintiff Michael Boyle and his wife, Plaintiff Anna Boyle, are citizens of the Commonwealth of Pennsylvania. (Doc. 5, Amend. Compl. ¶ 1). Defendants are citizens of New York, New Jersey, and Connecticut.[2] (Id. ¶ 2-5). Additionally, the amount in controversy exceeds $75,000. (Id. ¶ 6). Because complete diversity of citizenship exists among the parties, and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . citizens of different States[.]"). As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case.[3] Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000)

---

[2] Defendant Econo-Pak is incorporated under the laws of the State of New Jersey and thus retains citizenship there. (Id. ¶ 2). Defendant Luis Nunez is a citizen of Connecticut. (Id. ¶ 3). Defendant Antonia Almonte-Nunez is a citizen of New Jersey. (Id. ¶ 4). Defendant CRS is incorporated under the laws of the State of New York and thus retains citizenship there. (Id. ¶ 5).

[3] Because there are no relevant differences between Pennsylvania and New Jersey law on the issue of scope of employment and liability of an employer for an employee's negligent actions while driving to or from work, we need not

4

(citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(C)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson,

---

engage in a choice of law analysis, and may refer interchangeably to the laws of Pennsylvania and New Jersey. See Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006). For the reasons that we outlined in our memorandum accompanying our August 16, 2016 order denying defendant's motion to transfer this case to the United States District Court for the District of New Jersey (Doc. 58), we will apply the law of Pennsylvania moving forward.

5

477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

Plaintiffs claim that Defendant CRS and Defendant Econo-Pak are vicariously liable for the negligent actions of Defendant Nunez under the theory of *respondeat superior* because he worked for them both at the time of the accident. The law provides that an employer may be held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment. Fitzgerald v. McCutcheon, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979). The contested issue here is whether Defendant Nunez was acting within the scope of his employment at the time of the accident.

The conduct of an employee is considered within the scope of employment for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. Id. at 1272 (citing Restatement (Second) of Agency, § 228). Generally, the scope of a servant's employment is a fact question for the jury. Anzenberger v. Nickols, 198 A.2d 309, 311 (Pa. Super. Ct. 1964). Where the facts are not disputed, however, the question of whether or not the servant is within the scope of his or her employment is appropriate for the court. Ferrell v. Martin, 419 A.2d 152, 155 (Pa. Super. Ct. 1980).

The facts in this case establish that Defendant Nunez was employed as a laborer by Defendant CRS, with an assignment to work at the Econo-Pak facility in Milford, Pennsylvania. Defendant CRS and Defendant Econo-Pak have filed separate motions for summary judgment, each arguing that the scopes of their individual employment relationships with Defendant Nunez do not extend to the actions of Defendant Nunez at the time of the accident. Because Defendant Nunez's employment relationship with Defendant CRS is different from his relationship with Defendant Econo-Pak, we will address the motions separately.

7

### I. Defendant CRS's Motion for Summary Judgment

As noted above, the parties agree that Defendant CRS employed Defendant Nunez as a laborer. At the time of the accident, his job as a laborer entailed putting together pallets at the Econo-Pak plant. Plaintiffs argue that although driving to and from work was not technically part of Defendant Nunez's responsibilities as a laborer, Defendant CRS and Defendant Nunez expanded the scope of his employment by "instruct[ing] Defendant Luis Nunez to transport [other] workers to and from the Econo-Pak facility;" by allowing Defendant Nunez to hand out pay-checks in his vehicle on behalf of Defendant CRS; and by Defendant Nunez "actively recruit[ing] workers for Defendant CRS and driv[ing] them to and from the Econo-Pak facility for the clear benefit of Defendant CRS and at the request of Defendant CRS." (Doc. 76, Pl.'s Br. in Opp. at 15). In response, Defendant CRS argues that the record clearly establishes that Defendant Nunez made his own arrangements with willing and voluntary coworkers to carpool to the Econo-Pak facility, and that Defendant CRS played no role in those arrangements. Thus, Defendant CRS argues that the only conclusion is that Defendant Nunez was not acting within the scope of his employment at the time of the accident. We agree with Defendant CRS.

To determine whether the scope of Defendant Nunez's employment extended to the carpool arrangement that he and his wife created to drive

8

coworkers to and from work, we must look at whether Defendant CRS had "the right and power to exercise control" over the manner in which Defendant Nunez conducted this ride arrangement. See Shuman Estate v. Weber, 419 A.2d 169, 172 (Pa. Super. Ct. 1980); Breslin v. Ridarelli, 454 A.2d 80, 82-83 (Pa. Super Ct. 1982)(holding that when the court examines "control" for the purpose of determining scope of employment, it must look at the master's right of control over not only the results of the work, but also the manner in which the work is to be performed).

A careful review of the record establishes the following: Defendant Nunez had finished work, clocked out, and was driving home to New Jersey at the time of the accident. (Doc. 65, Def. CRS's SOF ¶ 5; Doc. 76-1, Exh. A, Nunez Dep. at 15:52-54). In his vehicle, which Defendant Antonia Almonte-Nunez owned, were eleven other individuals—some of whom worked for Defendant CRS, some of whom evidently worked directly for Defendant Econo-Pak. These passengers voluntarily arranged their rides with Defendant Nunez, and either gave the Nunez family money for gas and tolls or compensated them an agreed upon amount per week. (Id. ¶11; Id. at 53:54). Neither Defendant Nunez nor his wife received any form of compensation from Defendant CRS for transporting these individuals. (Id. ¶ 13; Id. at 21-22, 78-79).

Although a representative of Defendant CRS knew that Defendant Nunez and his wife provided transportation to CRS employees, the representative did not know the specifics of the arrangements. (Doc. 76-7, Exh. G, Avila Dep. at 25:4-13). No representative of Defendant CRS controlled the pick-up times, nor is there any evidence that Defendant CRS insisted or instructed Defendant Nunez or his wife to drive any CRS employee to or from work. (Id. at 25:20-25, 26:1-6). In fact, as admitted by all witnesses who would have knowledge, Defendant CRS provided its own method of transportation for its employees in which individuals specifically hired as drivers by Defendant CRS would transport people to the Econo-Pak plant from CRS's offices in New Jersey. (Id. at 24:11-12).

Plaintiffs argue that Defendant CRS had control over the manner in which Defendant Nunez drove the van for his carpool and control over who was allowed to ride in the van. These assertions are also wholly unsupported by the record. Plaintiffs primarily rely on the deposition testimony of Juan Avila, a supervisor for Defendant CRS who was assigned to work at the Econo-Pak plant. Plaintiffs claim that Avila testified that "if Mr. Nunez had a mechanical issue with his van, he would have to report that issue to Mr. Avila." (Doc. 76, Pl.'s Br. in Opp. at 16). A review of the record reveals that this is not an accurate representation. In fact, in the lines cited by the plaintiffs, Avila is asked: "Did Mr. Nunez ever come to

you and tell you that he was having any problems with one of his vans." (Doc. 76-7, Exh. G, Avila Dep. at 39:17-19). Avila responds: "Yeah, a couple times the van broke down and he was not able to bring people in." (Id. at 39: 24-25). We agree with Defendant CRS that this was simply a courtesy to Defendant CRS by Defendant Nunez, letting the appropriate supervisor know that some people may have had to find alternate transportation, and not an obligated report.

Plaintiffs also claim that whenever a dispute arose between Defendant Nunez and his passengers, the passengers had to bring it to Avila's attention. (Doc. 76, Pl.'s Br. in Supp. at 16). Again, plaintiffs have mischaracterized this witness's testimony. First, it is nowhere in Avila's deposition that passengers were required to report issues with Defendant Nunez's transportation to Avila. Second, while Avila does state that disputes were brought to his attention at times, he testified that would let the individuals involved know that the dispute was between them and Defendant Nunez and they needed to work it out themselves. (Doc. 76-7, Exh. G, Avila Dep. at 38:25; 39:1-16).

Plaintiffs continue to dissect Avila's testimony in numerous other places throughout his brief. For example, they argue that Avila testified if he fired someone he would notify Defendant Nunez because it was the responsibility of Defendant Nunez to find new workers when they were needed on behalf of Defendant CRS and bring them into work. They also argue that Avila testified

11

that Defendant Nunez would hand out employees' pay checks on behalf of Defendant CRS in his van. Just as we concluded above, we find these assertions, along with many others made in plaintiffs' brief, to also be gross misrepresentations of Avila's testimony.

Plaintiffs' final argument appears to be that because Defendant Nunez recruited other workers and placed advertisements in laundromats, on light poles, and in grocery stores looking for people to work for Defendant CRS at the Econo-Pak plant, Defendant CRS must have had control over Defendant Nunez's carpool. We fail to find the connection. While it may very well be true that Defendant Nunez actively recruited for Defendant CRS, no evidence in the record establishes: (1) that this was perceived by Defendant CRS as part of Defendant Nunez's job; or (2) that this had any relation to Defendant Nunez's carpool in such a way that it would benefit Defendant CRS. In fact, Defendant Nunez likely had a personal incentive to recruiting coworkers—more workers who may be willing to ride in his van and pay him compensation.

As such, we find that Defendant Nunez was outside of the scope of his employment with Defendant CRS when he was driving himself and eleven other coworkers home from work the day of the accident. We will grant summary judgment for Defendant CRS.

**II. Defendant Econo-Pak's Motion for Summary Judgment**

Defendant Nunez's relationship with Defendant Econo-Pak is different from his relationship with Defendant CRS. Defendant Econo-Pak did not actually employ Defendant Nunez; rather, he worked for Defendant CRS which assigned him to work at Defendant Econo-Pak's facility. The parties agree, however, that a formal employment relationship is not necessary for a *respondeat superior* claim. As mentioned above, the test for the kind of relationship necessary for a *respondeat superior* claim is framed in terms of "the right and power to exercise control" over the manner in which the employee performs the work. Shuman Estate, 419 A.2d at 172. The parties appear to agree that this case law extends to master/servant relationships, like the relationship between Defendant Econo-Pak and Defendant Nunez.

Thus, plaintiffs argue that Defendant Econo-Pak should be liable for the negligent acts of Defendant Nunez if it is found that Defendant Nunez was "acting on behalf of, at the order of, or at the request of" Defendant Econo-Pak and Defendant Econo-Pak had a right of control over Defendant Nunez during his trips to and from work. (Doc. 76, Pl.'s Br. in Opp. at 7). Plaintiffs argue that the facts in the record support such a finding. Specifically, plaintiffs call our attention to deposition testimony from coworkers who rode in the Nunez van. In one instance, a coworker testifies that Defendant Nunez would take attendance of the people who boarded the van, and would give that list upon arrival to a

supervisor at the Econo-Pak plant. In another, a separate coworker testified that on numerous occasions she saw people turned away from the van if their name was not on a preprinted list of people that were supposed to go to Econo-Pak that day. Plaintiffs argue that these instances, among others, demonstrate that Defendant Econo-Pak was in control of who rode on the van. We are not convinced.

A closer review of the record makes clear that Defendant Nunez was not a supervisor for Defendant Econo-Pak, nor is there any reason to believe that Defendant Nunez was instructed who to bring with him. The testimony by Juan Avila, the supervisor employed by Defendant CRS but assigned to work at Econo-Pak plant, reveals that the attendance sheet was merely a practical effort to inform Econo-Pak supervisors how many workers were present at the plant on a given day. (Doc. 76-7, Exh. G, Avila Dep. at 28:14-16). Avila would let Defendant Nunez know that workers were not needed at work that day as a courtesy. Despite plaintiffs' assertion to the contrary, insufficient evidence exists that Defendant Nunez was transporting workers to and from Econo-Pak at the specific request of Defendant Econo-Pak, and there is absolutely no evidence that he was being paid to do so.

The remainder of our analysis is congruent with the analysis in the previous section, thus in the interest of brevity, we will not revisit the identical facts. In

sum, because Defendant Nunez had finished work, clocked out, and was driving home in his personal vehicle at the time of the accident, he was not acting within the scope of his employment as a laborer for Defendant Econo-Pak. Further, we find that the car pooling arrangement was a voluntary arrangement between the Nunez family and those whom they drove. There is no evidence that this arrangement was one intended to benefit Defendant Econo-Pak, as the only people who received a benefit from this arrangement were the Nunezes. We will grant summary judgment to Defendant Econo-Pak.

**Conclusion**

Accordingly, we find that Defendant Nunez was not acting within the scope of his employment with either Defendant CRS or Defendant Econo-Pak at the time of the accident. We will grant summary judgment to both defendants. An appropriate order follows.[4]

**Date: February 27, 2018**             <u>s/ James M. Munley      </u>
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**

---

[4] Defendant Econo-Pak asked the court for an oral argument on this matter. (Doc. 71). In light of this memorandum, we find oral argument to be unnecessary. Defendant Econo-Pak's request will be denied.